UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| Robert Forest Nelson, Jr., | No. 13-cv-279 (DWF/LIB) |
| v. | **REPORT AND RECOMMENDATION** |
| Mark Greiner, Itasca County Sheriff's Office, Mark D. Blanchard (Police Officer #234), and City of Bovey Police Department, | |
| Defendants. | |

This matter came before the undersigned United States Magistrate Judge upon the City Defendants' Motion to Dismiss, [Docket No. 8], and upon Plaintiff's Motion for a Temporary Restraining Order & Preliminary Injunction, [Docket No. 31]. The case has been referred to the undersigned Magistrate Judge for a report and recommendation, (see Order of Reference [Docket No. 19]), pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1. The Court held a hearing on the motions on July 18, 2013.[1] For reasons outlined below, the Court recommends that Plaintiff's Motion for a Temporary Restraining Order & Preliminary Injunction, [Docket No. 31], be **DENIED**, and that the City Defendants' Motion to Dismiss, [Docket No. 8], be **GRANTED**.

I.  BACKGROUND

This case arises from the arrest on May 22, 2012, of Robert Forest Nelson, Jr. ("Plaintiff") on charges of driving while intoxicated ("DWI") and blood alcohol breathalizer test

---

[1] Plaintiff requested, and the Court granted, permission to attend the July 18, 2013, motions hearing telephonically. (See Docket No. 44).

1

refusal.  In this 42 U.S.C. § 1983 action, Plaintiff alleges that his due process rights under both the United States and Minnesota constitutions were violated by Itasca County Sheriff's Deputy Mark Greiner ("Defendant Greiner") and the Itasca County Sheriff's Office ("Defendant Sheriff's Office"); and by City of Bovey Police Officer Mark D. Blanchard ("Defendant Blanchard") and the City of Bovey Police Department ("Defendant Police Department").

On April 9, 2013, the City Defendants (Defendant Blanchard and Defendant Police Department) made their Motion to Dismiss, [Docket No. 8], alleging that Plaintiff has failed to state claims upon which relief can be granted.  (See City Defs.' Mem. Supp. Mot. Dismiss [Docket No. 10] (hereinafter "City Defs.' Mem.")).  Plaintiff responded to the motion to dismiss on April 19, 2013.  (Pl.'s Resp. Mot. Dismiss [Docket No. 23] (hereinafter "Pl.'s Resp.").  The City Defendants filed their reply on July 3, 2013.  (City Defs.' Reply Supp. Mot. Dismiss [Docket No. 42] (hereinafter "City Defs.' Reply").

Meanwhile, on May 6, 2013, Plaintiff made his Motion for Temporary Restraining Order and Preliminary Injunction, [Docket No. 31], seeking relief against the County Defendants with regard to booking practices at the Itasca County Jail.  (See Pl.'s Mem. Supp. Mot. TRO and Prelim. Inj. [Docket No. 32] (hereinafter "Pl.'s Mem.").  The County Defendants (Defendant Greiner and Defendant Sheriff's Office) responded to the motions on June 20, 2013.  (County Defs.' Resp. Mot. TRP and Prelim. Inj. [Docket No. 39] (hereinafter "County Defs.' Resp.").

## II.  FACTS ALLEGED IN THE COMPLAINT[2]

On May 22, 2012, Plaintiff was working as an ironworker on a job site in Coleraine, Minnesota, and residing at a motel in Grand Rapids, Minnesota.  (Compl. [Docket No. 1], at 7, ¶

---

[2] In reviewing a motion to dismiss under Rule 12(b)(6), the Court "look[s] only to the facts alleged in the complaint."  Riley v. St. Louis County of Mo., 153 F.3d 627, 629 (8th Cir. 1998).  Thus, the facts for this Part are drawn from Plaintiff's Complaint.  [Docket No. 1].

2

1). That evening, Plaintiff received a phone call from his employer,[3] who needed him to report immediately to work. (Id. at 7, ¶ 3). Plaintiff gargled using a prescription oral rinse, which he states "is super strong & smells like booze." (Id. at 7-8, ¶ 4). He then rushed out of his hotel room to drive to the job site, despite the fact that he was wearing only "pajama bottoms cut down into shorts." (Id. at 8, ¶ 5). While Plaintiff was en route, he received another call from his employer, urging him to hurry. (Id. at 8, ¶ 6). While driving northbound on Highway 169, Plaintiff hit a bump in the road, which caused his mobile phone to bounce off the seat and onto the floor near the passenger seat. (Id. at 8, ¶ 7). When the phone rang again, Plaintiff reached down to retrieve it, causing the vehicle he was driving to swerve. (Id. at 8-9, ¶ 8).

Plaintiff was then pulled over by Defendant Greiner (who had been involved in the arrest of Plaintiff on a DWI charge approximately two months earlier), who subsequently was assisted by Defendant Blanchard. (Id. at 9, ¶¶ 9-10). Defendant Greiner stated that Plaintiff smelled as if he had been drinking. (Id. at 10, ¶ 11). Plaintiff replied by explaining about his prescription oral rinse, but that the oral rinse was back at his hotel. (Id. at 10, ¶¶ 11-12). Defendant Greiner then conducted field sobriety tests, including Horizontal Gaze Nystagmus ("HGN") test, the "alphabet test,"[4] and the One-Legged Stand ("OLS") test, which Plaintiff failed. (Id. at 10-12, ¶¶ 13-16, 18). Defendant Greiner then administered a field sobriety test, at which time Plaintiff's blood-alcohol content registered 0.223 percent, almost three (3) times the legal limit of 0.08 percent. (Id. at 12, ¶ 19).

At that time, Plaintiff was arrested and transported to the Itasca County Jail (the "jail"), where Defendant Greiner read to Plaintiff, and filled out, a "Motor Vehicle Implied Consent Advisory" form. (Id. at 12, ¶¶ 19-20). A public defender was appointed for Plaintiff on May 23,

---

[3] Plaintiff seems to refer interchangeably to "a contractor" and "the Boss." (See Compl. [Docket No. 1], at 7, ¶ 3; 8, ¶ 6). The Court presumes these are the same person, and will refer to him as Plaintiff's "employer."
[4] Defendant Greiner asked Plaintiff to recite the alphabet backwards.

3

2012; however, he fired her on May 29, 2012.  (Id. at 16, ¶¶ 26-27).  On June 12, 2013, Defendant Blanchard wrote a "supplemental report" with regard to the criminal case against Plaintiff, which Plaintiff states was nearly identical to Defendant Greiner's initial report on the arrest.  (Id. at 17, ¶ 28-29).  Plaintiff remained jailed until July 16, 2012, when, as part of a plea deal, he ultimately pleaded guilty to careless driving.  (Id. at 20-22, ¶¶ 38, 44).  Plaintiff was fined $75.00 and sentenced to forty-seven (47) days in jail; with credit for time served, he was released that day.  (Id. at 22, ¶ 44).

Between July 16, 2012, and July 24, 2012, Plaintiff sought four (4) times to recover his Ford Explorer from the Itasca County impound lot, but was told each time that it was being held as the subject of a vehicle seizure and forfeiture action.  (Id. at 22, ¶ 45).  On July 24, 2013, attorney John P. Dimich, whom Plaintiff identifies as the prosecutor, wrote a letter to the Itasca County Sheriff stating that the vehicle was not subject to seizure and "can be returned to the owner per your rules on storage fees and towing costs."  (Id. at 22, ¶ 48 and Ex. G).  Plaintiff states that "[t]hey continued to refuse to release [his vehicle], so I gave it away."

Plaintiff's Complaint alleges a total of twenty-five (25) causes of action.  Several of those allege claims are only against one or both of the County Defendants, and, consequently, are not at issue for purposes of the present Motion.[5]  The remainder of Plaintiff's claims which are at issue for purposes of the Motion to Dismiss now before the Court can be categorized as follows:

- **Conspiracy**: Plaintiff alleges that Defendant Greiner and Defendant Blanchard conspired, as defined by 42 U.S.C. § 1983, to frame him for the DWI charge, (12th Cause, Id. at 27, ¶ 60; and 14th Cause, Id. at 28, ¶ 62);

---

[5] The City Defendants are not named, either individually or collectively, in Plaintiff's First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, Sixteenth, Seventeenth, Eighteenth, Nineteenth, Twentieth, Twenty-First, or Twenty-Fifth Causes of Action.  (Compl. [Docket No. 1], at 23-27, ¶¶ 49-59; at 29-30, ¶ 64-69; at 31-32, ¶ 73).

4

- **Due Process**: Plaintiff alleges that Defendant Blanchard's "supplemental report" is "so egregious and outrageous" that it violates his rights to procedural and substantive due process under the Fifth and Fourteenth Amendments, (13th Cause, Id. at ¶ 61);

- <u>Monell</u>: That the Defendant Police Department's "customs," "policies," and/or "procedures" motved Defendant Blanchard to engage in the conspiracy with Defendant Greiner, (15th Cause, Id. at 28-29, ¶ 63);

- **State Constitutional Claims**:
  - That Defendant Blanchard's "actions" violated Plaintiff's right to due process under Article I, § 7 of the Minnesota Constitution, (22d Cause, Id. at 30-31, ¶ 70);
  - That Defendant Police Department's "customs, policies and procedures" violated Plaintiff's right to due process, with regard both to liberty and to property, under Article I, § 7 of the Minnesota Constitution, (23d Cause, Id. at 31, ¶ 72);

- **State Common Law Claim**: That the conspiracy between Defendant Greiner and Defendant Blanchard resulted in an injury to Plaintiff, (24th Cause, Id. at 31, ¶ 72).

### III. PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER & PRELIMINARY INJUNCTION [Docket No. 31]

Plaintiff seeks a preliminary injunction[6] against the County Defendants barring them from "recording in any manner, fashion or form by any means whatsoever, the newly-arrived

---

[6] It was not entirely clear from Plaintiff's motion papers whether this motion was one for a preliminary injunction or temporary restraining order. (See Motion [Docket No. 31]) (styled as, and requesting, both a temporary restraining order and a preliminary injunction). Regardless, because the standard for analyzing a motion for a temporary restraining order is the same as for a motion for a preliminary injunction, there does not appear to be a material difference for purposes of this motion. Moreover, the County Defendants have noticed their appearances, submitted a written memorandum with numerous accompanying exhibits, and made oral argument in opposition to Plaintiff's motion at the hearing. Therefore, the Court construes the motion as one for a preliminary injunction. See C.S. McCrossan Const., Inc. v. Minnesota Dept. of Transp., No. 13-923 (RHK/JSM), 2013 WL 2278037, at *4 n.10 (D. Minn. May 6, 2013) (noting the applicable standards are the same and construing the movant's ambiguous motion as one for a preliminary injunction because the nonmovant had notice and the issues were fully briefed).

incoming arrestee to the Itasca County Jail." (Pl.'s Mem. [Docket No. 32] at 2). In the alternative, Plaintiff asks for an order that the County Defendants be required to:

> (A) Notify in writing all current pre-trial detainees of the Itasca County Jail they were <u>secretly</u> filmed without their knowledge or consent in violation of the U.S. and Minnesota Constitutions;
>
> (B) Post signs in the booking room, inmate rec room, multi-purpose room and <u>ALL</u> inmate cell blocks, that during the intake procedure private medical and/or mental health data is recorded[; and]
>
> (C) Require that <u>ALL</u> incoming pre-trial detainees/arrestees sign for (I) acknowledgement of verbal <u>TENNESSEN</u> warning and (II) acknowledgement of verbal <u>MIRANDA</u> warning the moment of arrival into the booking room of Itasca County Jail.

(<u>Id.</u>)

### A. Standard of Review

When considering a motion for a preliminary injunction, the Court considers the following four factors: "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." <u>Dataphase Systems, Inc. v. C L Systems, Inc.</u>, 640 F.2d 109, 113 (8th Cir. 1981) (en banc); <u>Tom T., Inc. v. City of Eveleth</u>, No. 03-cv-1197 (MJD/RLE), 2003 WL 1610779, at *3 (D. Minn. Mar. 11, 2003).

### B. Discussion

The Court recommends denying Plaintiff's motion for preliminary injunctive relief because he has not met his burden with regard to at least two of the factors listed above: (1) Plaintiff has not shown that he is likely to succeed on the merits of his claim; and (2) he has not shown that, unless the Court grants him injunctive relief, he will suffer irreparable harm.

6

**1. Likelihood of Success on the Merits**

"Because the probability of 'success on the merits has been referred to as the most important of the four factors,' we consider it first." Arnzen v. Palmer, 713 F.3d 369, 372 (8th Cir. 2013) (quoting Roudachevski v. All-American Care Ctrs., Inc., 648 F.3d 701, 706 (8th Cir. 2011) (internal edit and citation omitted)). In the present case, the Court finds that Plaintiff has failed to show that he is likely to succeed on the merits of his claim because (a) he has made no claim against any Defendant in the present case with regard to video surveillance, and (b) even if he had made such a claim, it would fail as a matter of law.

First, the Court observes that, although Plaintiff alleges in its Memorandum that the County Defendants "secretly record[] the booking room process in violation of the Fourteenth Amendment, and . . . both state and federal medical data privacy statutes," (Pl.'s Mem. [Docket No. 32] at 2), he brings no similar claim in his Complaint. Plaintiff's Complaint, [Docket No. 1], contains a variety of claims in which he alleges that the County Defendants violated his rights under the Fourteenth Amendment.[7] However, neither Plaintiff's Complaint nor his attached Exhibits, which total 49 pages, contain a single reference to video surveillance. (See Docket Nos. 1, 1-1). Although the Court construes Plaintiff's claims liberally,[8] "'liberal construction does not require a court to conjure allegations on a litigant's behalf.'" Martin v. Overton, 391 F.3d 710, 714 (6th Cir. 2004) (quoting Erwin v. Edwards, 22 Fed. Appx. 579, 580 (6th Cir.

---

[7] See Compl. [Docket No. 1], at 23, ¶ 49 (alleging that traffic stop without probable cause violated his Fourteenth Amendment right to substantive due process); at 23, ¶ 50 (alleging that Defendant Greiner's use of "alphabet test" during traffic stop violated his Fourteenth Amendment right to substantive due process); at 23-34, ¶ 51 (alleging that Defendant Greiner's use of "OLS" test violated his Fourteenth Amendment rights to procedural and substantive due process); at 24-25, ¶ 53, 55 (alleging that Defendant Greiner's refusal to allow Plaintiff to phone a lawyer before providing a urine sample violated his Fourteenth Amendment rights to procedural and substantive due process); at 26, ¶¶ 56-57 (alleging that Defendant Greiner's refusal to offer an alternative blood test upon Plaintiff's refusal to provide urine sample violated his Fourteenth Amendment rights to procedural and substantive due process); at 27, ¶¶ 58-59 (alleging that Defendant Sheriff's Office's seizure and subsequent refusal to release his vehicle violated his Fourteenth Amendment rights to procedural and substantive due process).
[8] "A document filed *pro se* is 'to be liberally construed,' and "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

2001)).[9] The Court cannot find that Plaintiff has a likelihood of success on the merits of a claim that he has not brought.

Additionally, even if the Court was to somehow find a way to construe Plaintiff's Complaint to include a claim alleging that video surveillance in the Itasca County Jail intake room violated his rights under the Fourth and Fourteenth Amendments, such a claim would fail as a matter of law. In general, "the State's intrusion into a particular area . . . cannot result in a Fourth Amendment violation unless the area is one in which there is a 'constitutionally protected reasonable expectation of privacy.'" New York v. Class, 475 U.S. 106, 112 (1986) (quoting Katz v. United States, 389 U.S. 347, 360 (1967) (Harlan, J., concurring)).[10] Applying that principle in the present case, the Eighth Circuit has held that "the expectation of privacy shared by . . . pretrial detainees is of a 'diminished scope.'" Arnzen, 713 F.3d at 372 (quoting Bell v. Wolfish, 441 U.S. 520, 557 (1979)).[11] Although "neither [the Eighth Circuit] nor the Supreme Court has ever outlined exactly what expectation of privacy these persons reasonably have," Id. at 372-73, the Eighth Circuit has determined that a reasonable expectation of privacy exists in a "single-person bathroom[] (intended for functions traditionally shielded by great privacy)," Id. at 373, but that detainees "do not have a reasonable expectation of privacy in their jail cells." Id. at 372 (citing United States v. Hogan, 539 F.3d 916, 923 (8th Cir. 2008)).

---

[9] See also Martin, 391 F.3d at 714 (noting that leniency granted to *pro se* litigants is "not boundless," and that "[p]*ro se* plaintiffs are treated to less stringent standards, but they are not automatically entitled to take every case to trial" (internal quotation omitted)); Leeds v. City of Muldraugh, 174 Fed. Appx. 251, 255 (6th Cir. 2006) (although a court must read a *pro se* complaint liberally, the rules do not require the court "to guess the nature of or create a litigant's claims"); cf. Stone v. Harry, 364 F.3d 912, 915 (8th Cir. 2004) (when reading a pro se complaint, "the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework," but does not "assume facts that are not alleged").

[10] See also Maryland v. Macon, 472 U.S. 463, 469 (1985) (no expectation of privacy in areas of a store "where the public was invited to enter and to transact business"); Oliver v. United States, 466 U.S. 170, 177-80 (1984) (open fields doctrine).

[11] See also Dawson v. Kendrick, 527 F. Supp. 1252, 1316 (S.D. W.Va. 1981) ("The expectation of privacy retained by a pre-trial detainee . . . in a county jail is necessarily diminished by the government's interest in the security and effective management of the jail" (citing Bell)).

While neither the Eighth Circuit nor the District of Minnesota has directly addressed the question of whether an arrestee has a reasonable expectation of privacy in the booking process, other courts faced with similar situations have answered in the negative. See, e.g., Lanza v. New York, 370 U.S. 139, 143-44 (1962) (prisoner did not have reasonable expectation of privacy in visiting room of public jail); United States v. Van Poyck, 77 F.3d 285, 290-91 (9th Cir. 1996) (pretrial detainee did not have reasonable expectation of privacy in his telephone calls from jail); Tittle v. Carver, 2008 U.S. Dist. LEXIS 73865, at *11-13, *24 (E.D. Wis. Sept. 24, 2008) (plaintiff in § 1983 action "had no reasonable expectation of privacy under the Fourth Amendment" regarding a telephone call he made from a jail booking room in the presence of an officer); McCraw v. Harrington, 2012 U.S. Dist. LEXIS 62469, at *25 (C.D. Cal. Jan. 19, 2012) (petitioner did not have a reasonable expectation of privacy in phone calls made from police station booking cell).

Therefore, even if this Court could somehow construe Plaintiff's complaint as including a claim that the County Defendants violated his privacy rights by taking video recordings of his booking intake at the Itasca County Jail, such a claim would fail as a matter of law, and Plaintiff would not be entitled to the preliminary injunctive relief that he seeks.

**2. Irreparable Harm**

Plaintiff does not clearly articulate the "irreparable harm" that he attributes to the County Defendants' practice of conducting video surveillance in the booking intake area of the Itasca County Jail.[12] However, irrespective of the specific harm, the Court observes that Plaintiff is not

---

[12] In his Memorandum, Plaintiff writes:
 The irreparable harm is the knowledge that . . . the Itasca County Sheriff's Office has unwittingly **EXPOSED** the FACT that it is currently engaged in **SECRETLY** recording newly arrested detainees in the booking room of the Itasca County Jail without the arrestee's knowledge or consent. No MIRANDA warning is provided. No TENNESSEN warning is provided. No signs are posted in the booking room or anywhere else in the jail warning arrestees that they are recorded in the booking room.
 As a matter of law, the continuing deprivation of constitutional rights constitutes irreparable harm.

currently in the Itasca County Jail, and there is no reason to believe that he is in danger of being returned to the Itasca County Jail. Therefore, Plaintiff has not shown that, absent the injunctive relief that he seeks, he will suffer irreparable harm.

The U.S. Supreme Court addressed a similar issue in <u>City of Los Angeles v. Lyons</u>. 461 U.S. 95 (1983). In <u>Lyons</u>, Los Angeles Police Department officers effected a traffic stop on the plaintiff and, "although [plaintiff] offered no resistance or threat whatsoever, the officers, without provocation or justification, seized [plaintiff] and applied a 'chokehold' . . . rendering him unconscious and causing damage to his larynx." <u>Id.</u> at 97. The plaintiff sought "preliminary and permanent injunction against the City barring the use of the [choke] holds." <u>Id.</u> at 98. However, the Court held that he could not demonstrate irreparable harm:

> The equitable remedy is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again -- a "likelihood of substantial and immediate irreparable injury." <u>O'Shea v. Littleton</u>, 414 U.S. [488], at 502. The speculative nature of Lyons' claim of future injury requires a finding that this prerequisite of equitable relief has not been fulfilled.
> . . .
> Absent a sufficient likelihood that he will again be wronged in a similar way, Lyons is no more entitled to an injunction than any other citizen of Los Angeles; and a federal court may not entertain a claim by any or all citizens who no more than assert that certain practices of law enforcement officers are unconstitutional.

<u>Id.</u> at 111. Relying on <u>Lyons</u>, the Eighth Circuit held in <u>Martin v. Sargent</u>, 780 F.2d 1334 (8th Cir. 1985), that "a prisoner's claim for injunctive relief to improve prison conditions is moot if he or she is no longer subject to those conditions." <u>Id.</u> at 1337. Additionally, to the extent that Plaintiff seeks injunctive relief on behalf of other, unnamed, Itasca County Jail inmates, the Eighth Circuit has long held that "[a] prisoner cannot bring claims on behalf of other prisoners." <u>Martin</u>, 780 F.2d at 1337 (citing <u>Miner v. Brackney</u>, 719 F.2d 954, 965 (8th Cir. 1983) (per

---

(Pl.'s Mem. [Docket No. 32], at 4-5 (emphasis in original)).

curiam); Carter v. Romines, 560 F.2d 395, 395 (8th Cir. 1977) (per curiam)). Therefore, because Plaintiff is no longer at the Itasca County Jail or otherwise in the custody of the County Defendants, he cannot show that he would suffer irreparable harm if the Court denies the preliminary injunctive relief that he seeks.

Because the Court finds that Plaintiff has not demonstrated a probability of success on the merits, and that he has not shown that without the preliminary injunctive relief requested he would suffer irreparable harm, the Court recommends that his Motion for a Temporary Restraining Order & Preliminary Injunction, [Docket No. 31], be **DENIED**.

**IV.    CITY DEFENDANTS' MOTION TO DISMISS [Docket No. 8]**

The City Defendants, by their Motion to Dismiss, ask the Court to dismiss Plaintiff's claims against them for failure to state a claim pursuant to Rule 12(b)(6).[13]

**A. Standard of Review**

Fed. R. Civ. P. 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." In addressing a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim, "we look only to the facts alleged in the complaint and construe those facts in the light most favorable to the plaintiff." Riley v. St. Louis County of Mo., 153 F.3d 627, 629 (8th Cir. 1998), citing Double D Spotting Svc., Inc. v. Supervalu, Inc., 136 F.3d 554, 556 (8th Cir. 1998). Additionally, "[a]ll reasonable inferences must be drawn in favor of the nonmoving party. Maki v. Allete, Inc., 383 F.3d 740, 742 (8th Cir. 2004).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662,

---

[13] The City Defendants alternatively assert that they could be granted judgment in their favor on Plaintiff's claims pursuant to Fed. R. Civ. P. 56.

678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Although "a court must accept as true all of the allegations contained in a complaint, [this rule] is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). When analyzing a complaint on a 12(b)(6) motion to dismiss, courts "should read the complaint as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009). Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Braden, 588 F.3d at 594 (quoting Ashcroft, 556 U.S. at 679).

### B. Discussion

Plaintiff's claims against the City Defendants constitute a collateral attack on his conviction, pursuant to a guilty plea, on a careless driving charge, and as such are barred by the doctrine set forth in Heck v. Humphrey. 512 U.S. 477 (1994).

As recounted in greater detail in Part II, supra, Defendant initially was charged with DWI and blood alcohol breathalyzer test refusal, and subsequently pleaded guilty as part of a plea deal to careless driving, a lesser-included offense of DWI.[14] In Heck, the U.S. Supreme Court held that:

> [I]n order to recover damages for allegedly unconstitutional . . . imprisonment, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

512 U.S. at 487.

---

[14] See State v. Applegate, 1995 Minn. App. LEXIS 1483, at *2 (Minn. Ct. App. Dec. 5, 1995) (describing careless driving as a lesser-included offense where defendant was initially charged with DWI); State v. Neddermeyer, 1987 Minn. App. LEXIS 5200, at *1-3 (Minn. Ct. App. Dec. 15, 1987) (same).

Had Plaintiff been convicted on the original DWI charge and subsequently brought the same claims in his Complaint, Heck would bar all of his claims against the City Defendants.[15] However, Plaintiff did not plead guilty to the DWI charge, but instead pleaded guilty to the lesser-included offense of careless driving.

Whether Heck bars a plaintiff who was convicted of a lesser-included offense from bringing a claim related to his arrest on the underlying charge is a question of first impression in the District of Minnesota. Plaintiff argues that his conviction for a lesser-included offense "does not and should not prevent his § 1983 claims against Defendants." (Pl.'s Resp. [Docket No. 23], at 14).

However, Heck itself advises that a "district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction." 512 U.S. at 487. In the present case, a judgment in favor of Plaintiff on any of his claims against the City Defendants would necessarily imply that his careless driving conviction was invalid. Accordingly, this Court is persuaded by other courts that have arrived at the common-sense conclusion that, where a plaintiff was charged criminally with one offense and subsequently convicted of a lesser-included offense, Heck still applies to bars claims arising from the

---

[15] Assuming, for the sake of argument, that Defendant had been convicted of, or had pleaded guilty to, the original DWI charge, his conspiracy claims, which allege that Defendant Blanchard conspired "to frame [Plaintiff] on [a] bogus DWI charge," would constitute collateral attacks and, accordingly, would be barred by Heck. See Flowers v. Dubbs, No. 10-cv-1555 (RHK/AJB), 2011 U.S. Dist. LEXIS 66791, at * 22 (May 9, 2011) (Boylan, C.M.J.) (where plaintiff challenged a disciplinary action by alleging he was disciplined on "trumped up charges," his "effort to frame the complaint in a manner that avoids the invalidation rule of Heck v. Humphrey is strained and unavailing"), adopted by 2011 U.S. Dist. LEXIS 63124 (D. Minn. June 13, 2011) (Kyle, J.).

Similarly, Plaintiff's Federal due process claim, which alleges that Defendant Blanchard violated his due process rights by generating a supplemental arrest report, would be a collateral attack on the basis of his prosecution and, accordingly, would be barred by Heck. See Franco v. Grant, No. 09-cv-552 (JRT/SRN), 2010 U.S. Dist. LEXIS 15241, at *6, *20-21 (Jan. 29, 2010) (Nelson, M.J.) (plaintiff's claims related to attempts to "frame" him and alleging destruction of evidence barred by Heck), adopted by 2010 U.S. Dist. LEXIS 15242 (D. Minn. Feb. 19, 2010) (Tunheim, J.).

Finally, the remainder of Plaintiff's claims against the City Defendants all arise from the allegations contained within these two charges – i.e., Plaintiff does not get to his Monell claim or his state-law claims if he cannot prove the conspiracy and/or the due process violation. Thus these claims, too, would be barred by Heck.

underlying criminal act, even though the plaintiff was not convicted of the charge that he originally faced. See, e.g., McQuerry v. Phillips, 2013 U.S. Dist. LEXIS 47512, at *3 (W.D. Ark. Apr. 2, 2013) ("[t]he mere fact that certain charges were dropped, while a lesser included offense was pursued by the prosecution, is not enough to state a claim for an unlawful arrest, conviction, or imprisonment").[16]

Additionally, Plaintiff argues that even if Heck bars his claims related to his arrest, it should not bar claims related to the seizure of his vehicle. (Pl.'s Resp. [Docket No. 23] at 13). However, Plaintiff makes only one claim against the City Defendants[17] related to the seizure of his vehicle, and even that claim is predicated on a challenge to his underlying conviction:

> (63) That Defendant, City of Bovey Police Dept. has "customs" and/or "policies" and/or "procedures" in place which were the moving force behind the unconstitutional acts of its agent Police Officer Mark Blanchard to actively participate in a conspiracy with Defendant Greiner *to frame me for bogus DWI charge* in order to enrich the County of Itasca by the seizure, forfeiture & sale of my vehicle.

(Compl. [Docket No. 1], at 28-29, ¶ 63 (Fifteenth Cause of Action)). Thus, this claim, too, is barred by Heck.

Because the invalidation rule of Heck v. Humphrey, supra, bars all of Plaintiff's claims against the City Defendants as a matter of law, the Court recommends that the City Defendants' Motion to Dismiss, [Docket No. 8], be **GRANTED**, and that Plaintiff's claims against the City Defendants be **DISMISSED with prejudice**.

---

[16] See also Kossler v. Crisanti, 564 F.3d 181, 188 (3d Cir. 2009) (defendant's acquittal did not constitute "favorable termination" under Heck where he was convicted on a different charge during the same criminal prosecution); Baker v. Wittevrongel, 363 Fed. Appx. 146, 150 (3d Cir. 2010) (defendant's "acquittal by a jury . . . did not constitute a 'favorable termination' because he was convicted of [a] lesser-included offense . . . in the same criminal proceeding for the same criminal act") (citing Kossler).

[17] Most of Plaintiff's claims concerning the seizure of his vehicle are made against the County Defendants. The Court takes no position on those claims, as they are not before the Court on the present Motion.

## V. CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Plaintiff's Motion for a Temporary Restraining Order & Preliminary Injunction, [Docket No. 31], be **DENIED**, as set forth above; and

2. The City Defendants' Motion to Dismiss, [Docket No. 8], be **GRANTED**, as set forth above, and that all of Plaintiff's claims against Defendants Mark D. Blanchard and the City of Bovey Police Department be **DISMISSED with prejudice**.


Dated: October 18, 2013
s/Leo I. Brisbois
LEO I. BRISBOIS
United States Magistrate Judge

**N O T I C E**

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by November 1, 2013**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within **fourteen days** of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.