UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Robert Forest Nelson, Jr.,                    Court File No. 13-cv-279 (DWF/LIB)

       Plaintiff,

v.                                             **REPORT AND RECOMMENDATION**

Mark Greiner, et al.,

       Defendants.

---

This matter came before the undersigned United States Magistrate Judge upon Defendants' Motion for Summary Judgment, [Docket No. 53]. This case has been referred to the undersigned Magistrate Judge for a report and recommendation, in accordance with 28 U.S.C. § 636(b)(1) and Local Rule 72.1. The Court held a motion hearing on August 28, 2014, regarding Defendants' motion.

For the reasons discussed herein, the Court recommends that Defendants' Motion for Summary Judgment, [Docket No. 53], be **GRANTED**.

## I.     BACKGROUND

This case arises from the arrest on May 22, 2012, of Plaintiff Robert Forest Nelson, Jr. ("Plaintiff") on charges of driving while intoxicated ("DWI") and refusal to submit to a chemical test for intoxication. Pursuant to a plea agreement, Plaintiff ultimately pled guilty to a single charge of careless driving in exchange for the State dropping the DWI and test refusal charges. In this 42 U.S.C. § 1983 action, Plaintiff alleges twenty-five (25) claims that his due process rights under both the United States and Minnesota constitutions were violated by Itasca County

Sheriff's Deputy Mark Greiner ("Defendant Greiner") and the Itasca County Sheriff's Office ("Defendant Sheriff's Office").[1]

Defendant Greiner and Defendant Sheriff's Office now move for summary judgment on each of Plaintiff's claims.

I.  **FACTS**

Plaintiff maintains that, on May 22, 2012, he was working on a job site in Coleraine, Minnesota, and residing at a motel in Grand Rapids, Minnesota. (Compl. [Docket No. 1], at 7, ¶ 1). That evening, Plaintiff received a phone call from his employer asking him to report immediately to work. (Id. at 7, ¶ 3). Plaintiff gargled using a prescription oral rinse, which he states "is super strong & smells like booze." (Id. at 7-8, ¶ 4). He then rushed out of his hotel room to drive to the job site in a white Ford Explorer owned by his girlfriend, Rachel Bledsoe. (Id. at 8, ¶ 5; Affidavit of Robin Washburn, [Docket No. 56], at ¶ 2). While driving northbound on Highway 169, Plaintiff hit a bump in the road, which caused his mobile phone to fall onto the floor near the passenger seat. (Compl. [Docket No. 1], at 8, ¶ 7). When the phone rang, Plaintiff reached down to retrieve it, causing the Explorer to swerve. (Id. at 8-9, ¶ 8).

The record demonstrates that Plaintiff was thereafter pulled over by Defendant Greiner, who subsequently was assisted by City of Bovey Police Officer Mark Blanchard ("Defendant Blanchard"). (Id. at 9, ¶¶ 9-10). During the stop, Plaintiff provided his identification and an insurance card indicating the Explorer was insured in Bledsoe's name. (Id., at Ex. 1). Defendant Greiner stated that Plaintiff smelled as if he had been drinking. (Id. at 10, ¶ 11). Plaintiff replied by explaining about his prescription oral rinse. (Id. at 10, ¶¶ 11-12). Defendant Greiner then conducted field sobriety tests, including the Horizontal Gaze Nystagmus ("HGN") test, the

---

[1] Plaintiff also alleged claims against City of Bovey Police Officer Mark D. Blanchard ("Defendant Blanchard") and the City of Bovey Police Department ("Defendant Police Department"). The District Court dismissed those claims with prejudice on November 14, 2013.

"alphabet test," and the One-Legged Stand ("OLS") test. (Id. at 10-12, ¶¶ 13-16, 18).  Plaintiff's performance on each of those tests was consistent with signs of intoxication. (Id.).  Defendant Greiner then administered a preliminary breath test, at which time Plaintiff's blood-alcohol content registered 0.223, almost three (3) times the legal limit of 0.08 percent. (Id. at 12, ¶ 19).

Plaintiff was arrested and transported to the Itasca County Jail (the "jail"), where Defendant Greiner read to Plaintiff, and filled out, a "Motor Vehicle Implied Consent Advisory" form. (Id. at 12, ¶¶ 19-20).  Pursuant to the Advisory form, Defendant Greiner offered Plaintiff an opportunity to contact an attorney before making the decision whether to take a chemical test for intoxication. (Affidavit of Jason Hill, [Docket No. 57] at Ex. C).  Plaintiff indicated that he wanted to talk to an attorney and that he understood that the government would provide him with one.  (Affidavit of Ryan M. Zipf, [Docket No. 10], at Ex. 1).  Defendant Greiner explained that no attorney was on hand at that time and provided Plaintiff with two phone books to consult if Plaintiff wanted to contact one. (Id.).  After making the phone books available, Defendant Greiner again asked if there was a specific person Plaintiff wanted to contact, to which Plaintiff responded, "Jews-are-Us." (Id.).  Defendant Greiner made the phone books available to Plaintiff for approximately two minutes, but Plaintiff made no attempt to consult either phone book during that time.  (Id.).

Defendant Greiner then asked Plaintiff whether he would submit a urine sample.  (Id.). Plaintiff responded that he would not do so until he talked to an attorney.[2] (Affidavit of Jason Hill, [Docket No. 57] at Ex. C).  A public defender was appointed for Plaintiff on May 23, 2012; however, Plaintiff elected to proceed p*ro se* on May 29, 2012. (Compl. [Docket No. 1], at 16, ¶¶ 26-27).  Plaintiff remained jailed until July 9, 2012, when he was released on bond. (Id. at 19, ¶¶

---

[2] Plaintiff also indicated when asked whether he had understood the Implied Consent Advisory that he "refuse[d] everything." (Affidavit of Jason Hill, [Docket No. 57] at Ex. C; Affidavit of Ryan M. Zipf, [Docket No. 10], at Ex. 1).

3

36).  Plaintiff ultimately accepted a plea deal and, on July 16, 2012, pled guilty to careless driving. (Id. at 20-22, ¶¶ 38, 44).

Between July 16, 2012, and July 24, 2012, Plaintiff attempted multiple times to recover the Explorer from the Itasca County impound lot, but was told each time that it was being held as the subject of a vehicle seizure and forfeiture action. (Id. at 22, ¶ 45). On July 24, 2013, attorney John P. Dimich, whom Plaintiff identifies as the prosecutor, wrote a letter to the Itasca County Sheriff stating that the vehicle was not subject to seizure and "can be returned to the owner per your rules on storage fees and towing costs." (Id. at 22, ¶ 48 and Ex. G). On August 2, 2012, pursuant to the request of the Explorer's owner, Bledsoe, the Explorer was released to a Donna Kirt. (Affidavit of Robin Washburn, [Docket No. 56], at ¶ 5).

Plaintiff's Complaint alleged a total of twenty-five (25) causes of action against Defendant Greiner, Defendant Sheriff's Office, Defendant Blanchard, and the City of Bovey Police Department ("Defendant Police Department").  On April 9, 2013, Defendant Blanchard and Defendant Police Department moved for dismissal of the claims against them, arguing, in pertinent part, that Heck v. Humphrey, 512 U.S. 477 (U.S. 1994), precluded Plaintiff from bringing claims that would necessarily imply the invalidity of his conviction. (Defs.' Motion to Dismiss, [Docket No. 8]; Defs.' Memorandum in Support of Motion to Dismiss, [Docket No. 10], at 9-10).  This Court issued a Report and Recommendation recommending that Plaintiff's claims against Defendant Blanchard and Defendant Police Department be dismissed as barred by the Heck doctrine. (Report and Recommendation, [Docket No. 45], at 12-14).  The District Court dismissed the seven (7) claims against Defendant Blanchard and Defendant Police Department with prejudice. (Order Adopting Report and Recommendation, [Docket No. 46], at 2).

Plaintiff's remaining claims can be categorized as follows:

• **Due Process**:
  o That Defendant Greiner engaged in egregious and outrageous acts in violation of Plaintiff's rights to procedural and substantive due process under the Fifth and Fourteenth Amendments by: stopping Plaintiff's vehicle (First Cause, Compl. [Docket No. 1] at 23, ¶ 49); administering the "alphabet" field sobriety test (Second Cause, Id., ¶ 50); administering the OLS field sobriety test (Third Cause, Id. at 23-24, ¶ 51); not allowing Plaintiff to make a phone call before deciding whether to submit to a urine test (Fifth Cause, Id. at 24-25, ¶ 53; Seventh Cause, Id. at 25, ¶ 55); not offering Plaintiff the opportunity to take a blood test for intoxication (Eighth Cause, Id. at 26, ¶ 56); and charging Plaintiff with refusal to take a chemical test for intoxication (Ninth Cause, Id., ¶ 57);
  o That Defendant Sheriff's Office violated his rights to procedural and substantive due process by refusing to release Bledsoe's impounded vehicle to Plaintiff (Eleventh Cause, Id. at 27, ¶ 59);

• **Denial of the right to counsel**:
  o That Defendant Greiner violated Plaintiff's right to counsel under the Sixth Amendment by not allowing him to make a phone call to contact an attorney prior to being required to decide whether to submit to a test for intoxication (Fourth Cause, Id. at 24, ¶ 52; Sixth Cause, Id. at 25, ¶ 54);

• **Conspiracy**:
  o That Defendant Greiner conspired with Defendant Blanchard, as defined by 42 U.S.C. § 1985, to frame Plaintiff for the DWI charge, (Twelfth Cause, Id. at 27, ¶ 60; and Fourteenth Cause, Id. at 28, ¶ 62);
  o That the common-law conspiracy between Defendant Greiner and Defendant Blanchard resulted in an injury to Plaintiff, (Twenty-Fourth Cause, Id. at 31, ¶ 72).

• **Monell**:
  o That the Defendant Sheriff Office's "customs," "policies," and/or "procedures" motivated Defendant Greiner to violate Plaintiff's constitutional rights, (Tenth Cause, Id. at 27, ¶ 58);

• **Federal Constitutional Claims**:
  o That the "State of Minnesota Vehicle Seizure and Forfeiture Statute" is unconstitutionally vague (Sixteenth Cause, Id. at 29, ¶ 64);
  o That the "State of Minnesota Driving While Impaired Statute" is unconstitutionally vague (Seventeenth Cause, Id., ¶ 65);

• **State Constitutional Claims:**
  o That Defendant Greiner's actions violated Plaintiff's rights and privileges under Article I, § 2 of the Minnesota Constitution (Eighteenth Cause, Id. at 29-30, ¶ 66), right to counsel under Article I, § 6 of the Minnesota Constitution (Nineteenth Cause,

       Id. at 30, ¶ 67), and right to due process under Article I, § 7 of the Minnesota Constitution, (Twentieth Cause, Id. at 30-31, ¶ 68);

- That Defendant Sheriff's Office's "customs, policies and procedures" violated Plaintiff's right to due process, with regard both to liberty and to property, under Article I, § 7 of the Minnesota Constitution, (Twenty-First Cause, Id., ¶ 69);
- That the "Implied Consent law(s) of the State of Minnesota" violate Article I, §§ 7 and 11 of the Minnesota Constitution (Twenty-Fifth Cause, Id. at 31, ¶ 73); and,

## II.    Standard of Review

Summary judgment is appropriate when the evidence demonstrates that there is no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Tusing v. Des Moines Indep. Cmty. Sch. Dist., 639 F.3d 507, 514 (8th Cir. 2011). A disputed fact is "material" if it might affect the outcome of the case, and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the burden of bringing forward sufficient admissible evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986). The evidence must be viewed in the light most favorable to the nonmoving party, and the nonmoving party must be given the benefit of all reasonable inferences to be drawn from the underlying facts in the record. Country Life Ins. Co. v. Marks, 592 F.3d 896, 898 (8th Cir. 2010). Reasonable inferences are those "that may be drawn without resorting to speculation." Mathes v. Furniture Brands Int'l, Inc., 266 F.3d 884, 885-86 (8th Cir. 2001) (citing Sprenger v. Fed. Home Loan Bank, 253 F.3d 1106, 1110 (8th Cir. 2001)).

However, the nonmoving party may not rest on mere allegations or denials in their pleadings, but must set forth specific admissible evidence-based facts showing the existence of a genuine issue. Forrest v. Kraft Foods, Inc., 285 F.3d 688, 691 (8th Cir. 2002).

The movant is entitled to summary judgment when the nonmoving party has failed to "establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.  No genuine issue of material fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

"A properly supported motion for summary judgment is not defeated by self-serving affidavits." Frevert v. Ford. Motor Co., 614 F.3d 466, 473 (8th Cir. 2010) (quoting Bacon v. Hennepin County Med. Ctr., 550 F.3d 711, 716 (8th Cir. 2008)). "Rather, the plaintiff must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor." Id. at 473-74.

### III.   ANALYSIS

Defendants contend they are entitled to summary judgment in their favor on all of Plaintiff's claims, arguing: (1) Minnesota does not recognize a private cause of action for violations of the Minnesota Constitution; (2) Plaintiff has failed to submit sufficient evidence to create genuine questions of material fact with regard to his due process, Sixth Amendment, Monell, and conspiracy claims; (3) Plaintiff is precluded from bringing his procedural due process claims by his guilty plea in the criminal case; (4) Plaintiff's claims are otherwise precluded under the Heck doctrine as collateral attacks on his conviction in the criminal case; (5) Defendant Greiner is entitled to qualified immunity with regard to all of his challenged actions; and (6) Defendant Sheriff's Office is not an entity amenable to suit under state law.

### A. Claims Relating to the Seizure of the Ford Explorer

Plaintiff's Eleventh and Sixteenth causes of action are based on Plaintiff being unlawfully deprived of the seized Ford Explorer.  Records submitted by Defendants, however, indicate that

7

Bledsoe, not Plaintiff, owned the Explorer. Accordingly, there is a threshold question of whether Plaintiff has standing to bring claims based on the seizure of the Explorer.

The "irreducible constitutional minimum of standing requires a showing of injury in fact to the plaintiff that is fairly traceable to the challenged action of the defendant, and likely to be redressed by a favorable decision." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 591 (8th Cir. 2009) (internal quotation marks, citations, and alterations omitted). "Injury in fact is an invasion of a legally cognizable right." Id. "Whether a plaintiff has shown such an injury 'often turns on the nature and source of the claim asserted.'" Id. (quoting Warth v. Seldin, 422 U.S. 490, 500 (1975)). Plaintiff's Eleventh and Sixteenth causes of action allege that law enforcement unlawfully seized the Explorer. In the Eighth Circuit, a challenge to an allegedly unlawful seizure by law enforcement is analyzed under Fourth Amendment principles. United States v. Ruiz-Zarate, 678 F.3d 683, 689 (8th Cir.), cert. denied, 133 S. Ct. 454 (2012).

"Fourth Amendment rights are personal and may not be vicariously asserted." Id. (quoting United States v. Randolph, 628 F.3d 1022, 1026 (8th Cir. 2011)). "If a defendant fails to prove a sufficiently close connection to the relevant places or objects searched he has no standing to claim that they were searched or seized illegally." United States v. Gomez, 16 F.3d 254, 256 (8th Cir. 1994) (citing United States v. Sanchez, 943 F.2d 110, 113 (1st Cir. 1991)).

> Factors relevant to the determination of standing include: ownership, possession and/or control of the area searched or item seized; historical use of the property or item; ability to regulate access; the totality of the circumstances surrounding the search; the existence or nonexistence of a subjective anticipation of privacy; and the objective reasonableness of the expectation of privacy considering the specific facts of the case.

Gomez, 16 F.3d at 256 (citing Sanchez, 943 F.2d at 113).

Defendants have submitted copies of the title to the Explorer, a bill of sale indicating that Bledsoe purchased the vehicle from a third party two days before Plaintiff's arrest, and a towed

vehicle report indicating Bledsoe had retrieved some possessions, including her checkbook, from the Explorer after it had been seized. The only evidence in the record presently before the Court that Plaintiff had any ownership or possessory interest in the Explorer consists of Plaintiff's unsupported assertion that the Explorer belonged to him and the fact that he was arrested while driving it.[3] While the Court in deciding this motion must view the evidence in the light most favorable to Plaintiff, it is not bound to accept an unsupported assertion of ownership that is so "blatantly contradicted by the record, so that no reasonable jury could believe it." Marksmeier v. Davie, 622 F.3d 896, 900 (8th Cir. 2010) (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)).

As a result, the only indication Plaintiff had even a possessory interest in the vehicle is the fact that he was arrested while driving it on a single occasion. The Eighth Circuit has previously held that a driver's single occasion use of a vehicle owned by another is insufficient to establish standing with regard to the vehicle, absent some other evidence the owner permitted the use. See United States v. Muhammad, 58 F.3d 353, 355 (8th Cir. 1995) (holding absent evidence of permission to use a vehicle owned and registered to another, a defendant discovered driving the vehicle on a single occasion lacked standing to challenge alleged Fourth Amendment violation). Plaintiff has not submitted any admissible evidence that Bledsoe permitted him to use the vehicle.[4] Accordingly, Plaintiff has failed to submit sufficient admissible evidence to raise a question of material fact whether he has standing to allege claims based on the seizure of the Explorer.

---

[3] Typically, a plaintiff opposing a summary judgment motion may not rely solely on the allegations in his complaint, but must come forward with specific evidence in support of each element of his claim. Forrest, 285 F.3d at 691. The Eighth Circuit has held, however, that a complaint and affidavit signed "under penalty of perjury" are to be treated as verified documents under 28 U.S.C. § 1746 and may contain sufficient evidence to survive a summary judgment motion. Burgess v. Moore, 39 F.3d 216, 218 (8th Cir. 1994). Plaintiff's complaint is signed "under penalty of perjury."

[4] Indeed, the evidence in the present record indicates that, once the Explorer was no longer being held subject to the possibility of forfeiture, Bledsoe directed that the vehicle be released to someone other than Plaintiff.

Based on the foregoing, the Court recommends that, to the extent the motion pertains to Plaintiff's Eleventh and Sixteenth Causes of Action, Defendants' Motion for Summary Judgment, [Docket No. 53], be **GRANTED**.

### B. Minnesota Constitutional Claims

Plaintiff's Eighteenth, Nineteenth, Twentieth, and Twenty-First causes of action assert that the Defendants' actions violated sections of the Minnesota Constitution, namely Article I, §§ 2 (rights and privileges), 6 (right to counsel), and 7 (due process). Defendants contend they are entitled to judgment as a matter of law as to each of those claims because Minnesota courts do not recognize private causes of action for violations of the state constitution.

The Eighth Circuit has observed:

> Minnesota courts explicitly refuse to find causes of action for damages under the Minnesota Constitution on their own unless the Minnesota Supreme Court has recognized the cause of action. See Mitchell v. Steffen, 487 N.W.2d 896, 905 (Minn. Ct. App. 1992) (finding that even if cause of action for damages existed under the Minnesota Constitution, sovereign immunity barred torts for deprivation of constitutional rights), aff'd on other grounds, 504 N.W.2d 198 (Minn. 1993); Bird v. State, Dep't of Pub. Safety, 375 N.W.2d 36, 40 (Minn. Ct. App. 1985) (recognizing that Minnesota Supreme Court has not recognized any tort for the violation of due process rights). We agree with the district court that because the Minnesota Supreme Court has not established an action for damages for these constitutional violations, the [Plaintiff's] claims fail.

Riehm v. Engelking, 538 F.3d 952, 969 (8th Cir. 2008).

Plaintiff has not cited to any legal authority to indicate that the Minnesota Supreme Court has recognized a private cause of action for violations of Article I, §§ 2, 6, or 7 of the Minnesota Constitution. Nor has the Court's own research revealed any such authority. Accordingly, the Court recommends that, to the extent the motion pertains to Plaintiff's Eighteenth, Nineteenth, Twentieth, and Twenty-First causes of action, Defendant's Motion for Summary Judgment, ([Docket No. 53]), be **GRANTED**.

## C. Remaining Claims

Plaintiff's remaining claims all challenge some aspect of the initial investigation supporting the original charges against Plaintiff or the validity of the statutes from which those charges were derived. Defendants argue that Plaintiff is procedurally barred from asserting those claims under Heck v. Humphrey, 512 U.S. 477 (1994). In the alternative, Defendants argue that, to the extent Plaintiff alleges violations of his right to procedural due process, Plaintiff has waived those claims, and, to the extent that Plaintiff alleges other claims, Plaintiff has failed to submit sufficient admissible evidence in support of each claim to raise questions of material fact to survive summary judgment.

This Court previously issued a Report and Recommendation, recommending that Plaintiff's claims against Defendant Blanchard and Defendant Police Department be dismissed, reasoning that, under Heck, 512 U.S. 477, the claims were not cognizable § 1983 claims. (See Report and Recommendation, [Docket No. 45]). The District Court adopted the Report and Recommendation without mentioning this Court's analysis of the Heck issue. (See Order Adopting Report and Recommendation, [Docket No. 46]). Defendant Greiner and Defendant Sheriff's Department now contend that the remaining claims in Plaintiff's Complaint are also barred by the Heck doctrine as collateral attacks on Plaintiff's conviction. (Defs.' Memorandum in Support of Motion for Summary Judgment, [Docket No. 55], at 18-19).

In Heck, the U.S. Supreme Court held that:

> [I]n order to recover damages for allegedly unconstitutional . . . imprisonment, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

512 U.S. at 487.

In issuing its earlier Report and Recommendation, the Court first considered whether the Heck doctrine bars a plaintiff from bringing a § 1983 claim related to an arrest on certain charges when that plaintiff is ultimately convicted of a lesser included offense to the initial charges. (See Report and Recommendation, [Docket No. 45], 13-14).[5] Applying the reasoning of Heck that a "court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction," 512 U.S. at 487, the Court concluded that Plaintiff's conviction for the lesser included offense of careless driving in this case precluded him from bringing § 1983 claims that challenged the investigation into the DWI and test refusal charges, because those charges were the basis for the prosecution which ultimately produced that conviction. (Report and Recommendation, [Docket No. 45], at 13).  The District Court's adoption of the earlier Report and Recommendation without comment on the reasoning regarding the Heck doctrine indicates the same result is required here.

Plaintiff's First, Second, and Third causes of action all challenge aspects of the traffic stop and, as such, the investigation supporting the DWI charges.  Plaintiff's Fourth, Fifth, Sixth, Seventh, Eighth and Ninth causes of action, all challenge aspects of the request for Plaintiff to submit to a chemical test for intoxication. As such, those causes of action challenge the investigation supporting both the DWI charge and the charge of test refusal.  Plaintiff's Tenth, Twelfth, and Twenty-Fourth causes of action also challenge the investigation as they allege that Defendant Sheriff's Department had policies that motivated the arresting officers to conspire to frame Plaintiff on false charges. By challenging the validity of the investigation, all of those causes of action necessarily challenge the validity of the basis for prosecuting Plaintiff and the

---

[5] In the present case, Plaintiff was arrested on charges of DWI and refusal to submit to a chemical test for intoxication, but ultimately pled guilty to the lesser included offense of careless driving, a lesser included offense of DWI. See e.g., State v. Applegate, 1995 Minn. App. LEXIS 1483, at *2 (Minn. Ct. App. Dec. 5, 1995) (describing careless driving as a lesser-included offense where defendant was initially charged with DWI).

resulting conviction. Similarly, Plaintiff's Seventeenth and Twenty-Fifth causes of action, which challenge the constitutionality of the statutes that were the basis for the initial charges, challenge the basis for prosecuting Plaintiff.

Perhaps the best evidence that Plaintiff's claims in the present civil case are a collateral attack on his conviction is a copy of the motion to dismiss Plaintiff filed pro se in the underlying criminal case. In that motion, Plaintiff advanced the same arguments he now asserts in support of his First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, and Ninth causes of action. (See Compl. [Docket No. 1], Ex. F (listing arguments that the stop, field sobriety tests, arrest, reading of the Implied Consent Advisory, not allowing Plaintiff to call an attorney, requesting Plaintiff to submit to a chemical test for intoxication, and charging Plaintiff were all unlawful)).

Because all of Plaintiff's remaining claims necessarily challenge the validity of the prosecution which ultimately led to Plaintiff's conviction, and because Plaintiff has not submitted any evidence, admissible or otherwise, to indicate that his conviction for careless driving has been reversed on appeal, expunged, or otherwise invalidated, Plaintiff is precluded under the Heck doctrine from bringing those claims in the present civil action. Accordingly, the Court recommends that, to the extent the motion pertains to Plaintiff's First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Twelfth, Seventeenth, Twenty-Fourth, and Twenty-Fifth Causes of action, Defendants' Motion for Summary Judgment, ([Docket No. 36]), be **GRANTED**.

### D. Remaining Claims; Alternative Analysis

Even assuming, for the sake of argument, that the Heck doctrine did not entirely preclude Plaintiff from bringing his remaining claims, the Court would conclude alternatively that Defendants are entitled to summary judgment in their favor because Plaintiff has waived his

procedural due process claims and failed to submit sufficient admissible evidence to raise questions of material fact regarding the other claims.

**1. Procedural Due Process.**

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." Matthews v. Eldridge, 424 U.S. 319, 332 (1976). "To establish a procedural due process violation, [a plaintiff] must prove that he was deprived of 'an opportunity . . . granted at a meaningful time and in a meaningful manner for [a] hearing appropriate to the nature of the case." Boddie v. Connecticut, 401 U.S. 371, 378 (1971) (citations and quotations omitted).

The Eighth Circuit has indicated that the criminal trial is the forum best suited to provide the opportunity to be heard regarding procedural due process violations that are alleged to have occurred in the course of a criminal investigation. See Vennes v. An Unknown No. of Unidentified Agents of U.S., 26 F.3d 1448, 1452 (8th Cir. 1994) ("By pleading guilty, Vennes elected to forego the post-deprivation process best suited to determining whether the agents in fact violated his due process rights—the criminal trial."). In addition, "[u]nder federal law, a litigant asserting a deprivation of procedural due process must exhaust state remedies before such an allegation states a claim under § 1983." Wax 'n Works v. City of St. Paul, 213 F.3d 1016, 1019 (8th Cir. 2000). On that basis, the Eighth Circuit has held that a plaintiff who pleads guilty foregoes the ability to bring procedural due process claims regarding the criminal investigation in a Bivens action, the federal analog to a § 1983 action. Vennes, 26 F.3d at 1452 (applying in a Bivens action the Eighth Circuit's procedural due process claim preclusion rule in § 1983 actions); see also Hartman v. Moore, 547 U.S. 250, 255 (2006) ("[A] Bivens action is the

14

federal analog to suits brought against state officials under . . . 42 U.S.C. § 1983."). As Plaintiff has not submitted any evidence to indicate he has appealed the conviction for careless driving in the underlying criminal case, Plaintiff has forgone the ability to challenge the alleged violations of his right to procedural due process in the state forums, and has failed to exhaust his state remedies.

### 2. Substantive Due Process

To the extent that Plaintiff's remaining claims allege violations of his right to substantive due process, Defendants argue Plaintiff has failed to submit sufficient evidence to raise a question of material fact regarding whether Defendant Greiner's challenged actions shock the conscience. "To establish a substantive due process violation, [a plaintiff] must demonstrate that a fundamental right was violated and that the conduct shocks the conscience." Akins v. Epperly, 588 F.3d 1178, 1183 (8th Cir. 2009).

Plaintiff admits that he was stopped after Defendant Greiner spotted him swerving on the road. "Even a minor traffic violation provides probable cause for a traffic stop." United States v. Harris, 617 F.3d 977, 979 (8th Cir. 2010). Defendant Greiner then administered field sobriety tests, to which Plaintiff admits to a performance that could be interpreted as evidencing signs of intoxication, i.e. the odor of alcohol, the presence of nystagmus, and an inability to complete a recitation of the alphabet or the one legged stand test. See Reeves v. Comm'r of Pub. Safety, 751 N.W.2d 117, 120 (Minn. Ct. App. 2008) (discussing the presence of nystagmus and difficulty completing the "one-legged stand test' as signs of intoxication); State v. Olson, 342 N.W.2d 638, 640 (Minn. Ct. App. 1984) (discussing inability to recite the alphabet backwards without error as a sign of intoxication supporting a finding of probable cause). Plaintiff also admits to producing a .223 result on the preliminary breath test before being arrested. See Olson, 342 N.W.2d 640

(discussing a result on a preliminary breath indicating a blood-alcohol content over the legal limit as a sign of intoxication). Even without taking into consideration the results of the two field sobriety tests Plaintiff seeks to challenge, the results of the horizontal gaze nystagmus test and the preliminary breath test provided sufficient probable cause to arrest Plaintiff on suspicion of driving while intoxicated. See State v. Kier, 678 N.W.2d 672, 678 (Minn. Ct. App. 2004) ("An officer needs only one objective indication of intoxication to constitute probable cause to believe a person is under the influence.") (quoting State v. Carver, 577 N.W.2d 245, 248 (Minn. Ct. App. 1998)). Accordingly, there is nothing in the record presently before the Court to indicate that Defendant Greiner's actions shocked the conscience in stopping and then arresting Plaintiff on suspicion of driving while intoxicated.

Similarly, there is nothing in the record presently before the Court to indicate that Defendant Greiner's actions shocked the conscience during the reading of the Implied Consent Advisory form. Although Plaintiff asserts Defendant Greiner did not allow him to contact an attorney[6], the record refutes that unsupported conclusory assertion. Marksmeier, 622 F.3d at 900 (8th Cir. 2010) (holding a court is not bound to accept on summary judgment an unsupported assertion so blatantly contradicted by the record no reasonable jury could believe it). Defendant Greiner in fact offered Plaintiff an opportunity to contact an attorney before asking Plaintiff to submit to a chemical test for intoxication, and provided Plaintiff with phone books once Plaintiff indicated he would like to contact one. In addition, it was only once Plaintiff made no attempt to consult the offered phone books and indicated that he refused "everything" that Defendant Greiner deemed Plaintiff to have refused to submit to a test for intoxication and subsequently

---

[6] Plaintiff's right to consult with an attorney during the reading of the Minnesota Implied Consent Advisory was based solely on the limited right provided for under Minnesota law; the right to counsel under the Sixth Amendment does not attach until prosecution has commenced. Texas v. Cobb, 532 U.S. 162, 166-68 (2001). Accordingly, Defendants would also be entitled to summary judgment of Plaintiff's claims alleging a denial of the U.S. Constitution's Sixth Amendment right to counsel.

charged him. The right to consult with an attorney in the reading of a Minnesota Implied Consent Advisory form is limited. See Busch v. Comm'r of Pub. Safety, 614 N.W.2d 256, 258 (Minn. Ct. App. 2000) (noting that the right to obtain legal advice before deciding whether to submit to a text for intoxication may not unreasonably delay administration of the test).  In addition, Minnesota courts have held that a driver's actions that frustrate the testing process will amount to a refusal to submit to a test. See Id. at 259 (holding driver's persistent silence when asked if he understood the advisory to constitute refusal); see also State v. Ferrier, 792 N.W.2d 98, 102 (Minn. Ct. App. 2010) ("In sum, refusal to submit to chemical testing includes any indication of actual unwillingness to participate in the testing process, as determined from the driver's words and actions in light of the totality of the circumstances.").

There is nothing in the record presently before the Court to indicate that Defendant Greiner's actions shocked the conscience during the reading of the implied consent advisory form or in charging Defendant with test refusal.

**3.  Conspiracy Claims**

Plaintiff's claims that Defendant Greiner conspired to frame him are similarly unsupported by sufficient admissible evidence to raise a genuine question of material fact.  To succeed on his § 1985 conspiracy claim, Plaintiff must show "(1) the existence of a conspiracy; (2) that the purpose of the conspiracy was to deprive Plaintiff of his civil rights; (3) an act in furtherance of the conspiracy; and (4) injury." McDonald v. City of Saint Paul, 679 F.3d 698, 706 (8th Cir. 2012).  "Common-law conspiracy involves a combination of persons to accomplish either an unlawful purpose or a lawful purpose by unlawful means." Anderson v. Douglas Cnty., 4 F.3d 574, 578 (8th Cir. 1993).  "To prove conspiracy, a party must specifically present facts tending to show agreement and concerted action." Id.  Here, Plaintiff has offered only a mere

conclusory allegation, unsupported by any admissible evidence, that Defendant Greiner acted in concert with another to violate his rights. The complete failure of a plaintiff to provide admissible evidence of a necessary element of his claim "necessarily renders all other facts immaterial." Celotex Corp., 477 U.S. at 322.

### E. Monell

Similarly, Plaintiff has failed to submit sufficient admissible evidence to raise a question of material fact regarding his Monell claim against Defendant Sheriff's Office. Assuming for the sake of argument that Plaintiff could sue Defendant Sheriff's Office instead of Itasca County[7], Plaintiff would be required to prove the existence of a policy or custom that caused him to be deprived of a federal right. See Snider v. City of Cape Girardeau, 752 F.3d 1149, 1160 (8th Cir. 2014) ("A municipality can be liable under § 1983 only if a municipal policy or custom caused a plaintiff to be deprived of a federal right or if the municipality failed to adequately train its employees."). Plaintiff has, however, again failed to offer anything other than a mere conclusory allegation unsupported by any admissible evidence that Defendant Sheriff's Department maintained such policies.

Because the Court concludes that Defendants are entitled to summary judgment of all of Plaintiff's claims as a result of Plaintiff's lack of standing, lack of private causes of action, the Heck doctrine, and for failure to demonstrate genuine disputes of material fact exist on each of the essential elements of the Plaintiff's claims under the principles of summary judgment, the

---

[7] Under Minnesota law, absent authorization to sue and be sued, a department of a municipal entity is not subject to suit. Hyatt v. Anoka Police Dep't, 700 N.W.2d 502, 505-06 (Minn. Ct. App. 2005); In re Scott Cnty. Master Docket, 672 F. Supp. 1152, 1187 n.1 (D. Minn. 1987), aff'd sub nom. Myers v. Scott Cnty., 868 F.2d 1017 (8th Cir. 1989) ("[Sheriff's] departments or offices are not legal entities subject to suit; therefore, the claims against them must be dismissed.").

Court recommends the Defendants' Motion for Summary Judgment, [Docket No. 53], be **GRANTED** in its entirety.

## IV.   CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendants' Motion for Summary Judgment [Docket No. 53], be **GRANTED** as set forth above.

Dated: October 3, 2014                                         s/Leo I. Brisbois
                                                               Leo I. Brisbois
                                                               U.S. MAGISTRATE JUDGE

## N O T I C E

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by October 17, 2014** a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections **by October 31, 2014**. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.